IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JOHN O. MILLER, | CV 23-75-H-DWM |
| Plaintiff, | |
| vs. | ORDER |
| MELISSA WOOFTER, ET AL., | |
| Defendants. | |

There are two motions to quash subpoenas before the Court. (Docs. 54 and 60.) Bowman Smelko's motion is denied. (Doc. 54.) Joseph McElroy, Bradley Newman, and Jimmy Patelis's motion is granted. (Doc. 60.)

I. **Background**

Miller is an inmate at Montana State Prison. His Second Amended Complaint is the operative pleading. (Doc. 13.) He names a single defendant, Melissa Woofter, who is a mental health therapist at the prison. (Doc. 13 at 2.) Generally speaking, Miller's allegations stem from his participation in a mental health group at the prison. (Doc. 13 at 5 – 8.) He claims he was retaliated against by Woofter in various ways for expressing his religious beliefs in this group.

On July 2, 2024, the Clerk of Court issued several subpoenas and provided them to Miller. (Doc. 23.) Four of these subpoenas were directed at Bowman Smelko, Joseph McElroy, Bradley Newman, and Jimmy Patelis. (Doc. 22-1 at 9 –

1

11, and 13.) These four non-parties are the subjects of the following motions.

## II. Motion to Quash Subpoena by Bowman Smelko

Bowman Smelko moves to quash the subpoena for deposition served upon him. (Doc. 54.) Smelko is a psychologist retained by the Department of Corrections to do an evaluation of Miller that is part of Miller's parole file. (Doc. 65 at 2.) According to Miller, Smelko "raised concern about Defendant Woofter's highly negative conduct reports" that were in Miller's file. *Id.*

Smelko seeks to quash his deposition subpoena because he has no information relevant to Miller's claims, and the deposition would impose an undue burden on him. (Doc. 55.) Miller responds that Smelko's evaluation of him, conducted after the main events related to Defendant Woofter, included a review of Woofter's reports or notes regarding Miller. Thus, Smelko's impression of Miller may have been affected by Woofter's alleged retaliatory behavior. (Doc. 65 at 3.) If Smelko's report was based on false or retaliatory information from Woofter, that would support Miller's claim of injury.

### A. Legal Standard

District courts maintain "wide latitude in controlling discovery" and "rulings on discovery issues fall within the court's broad discretion over case management." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). Federal Rule of Civil Procedure 45 governs non-party subpoenas. *See*

*generally* Fed. R. Civ. P. 45. It is generally accepted that the scope of discovery permitted under Rule 45 is the same as that permitted under Federal Rule of Civil Procedure 26(b). *Adams v. Gissell,* 2022 WL 355758, at *1 (D. Mont. Feb. 7, 2022). The scope of permissible discovery extends to all

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Though relevancy is broadly defined, it retains "ultimate and necessary boundaries." *BNSF Railway Co. v. Center for Asbestos Related Disease, Inc.*, 2022 WL 1442854, at *3 (D. Mont. May 6, 2022) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). When evaluating whether discovery is relevant, the 2015 Amendments direct the courts' attention to proportionality; in other words, courts must balance the burden, cost, and importance of the issues at stake. *Frost v. BNSF Ry. Co.*, 218 Supp. 3d 1122, 1134 (D. Mont. 2016) (citing Rule 26 advisory committee notes (2015)). The 2015 Amendments caution courts against using the now-eliminated "reasonably calculated" language. *See* Rule 26 advisory committee notes (2015) ("The 'reasonably calculated [to lead to admissible evidence]' phrase has continued to create problems, however, and is removed from these amendments.").

3

The party seeking discovery has the burden of demonstrating relevance under Rule 26(b)(1). *Caekaert v. Watchtower Bible and Tract Society of New York, Inc.*, 2023 WL 3795394, at *1 (D. Mont. June 2, 2023). Notably here, courts have demanded a "stronger-than-usual showing of relevance" where the request is served on a non-party, "requiring the requesting party to demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *BBK Tobacco & Foods LLP v. Skunk Incorporated*, 2020 WL 2395104, at *2 (D. Ariz. May 12, 2020). Thereafter, the party opposing discovery has the burden to show the request is improper. *Asarco LLC v. Atlantic Richfield Co.*, 2013 WL 12448555, at *2 (D. Mont. Sept. 20, 2013).

The threshold question is whether Smelko's testimony is relevant to Miller's case. Smelko contends that his only awareness of Woofter is through reading her report, and thus he does not have relevant information. But Miller thinks that that knowledge is enough; Woofter's report caused a negative impression in Smelko that resulted in Smelko's further negative report. In Miller's view, Smelko's testimony is relevant to the damage done by Woofter's allegedly retaliatory actions or reports. Smelko's testimony is relevant to Miller's claims.

As to the next factor, Smelko has failed to convince that his testimony presents an undue burden on him. If his knowledge is as limited as he believes, his deposition should be relatively short. Given advanced notice, he can schedule the

deposition at a convenient time. Smelko's motion to quash is denied.

### III. Motion to Quash McElroy, Newman, and Patelis's Subpoenas

Non-party Montana Board of Pardons and Parole members Joseph McElroy, Bradley Newman, and Jimmy Patelis, have also moved to quash the subpoenas served on them by Miller. (Doc. 60.) They contend that they have quasi-judicial immunity from being subpoenaed to testify about their decision-making processes. Further, they assert their testimony would be both irrelevant and an undue burden.

Miller's response brief focuses only on Brad Newman, and whether his testimony is relevant to Miller's claims. Miller does not address the issue of immunity, or the potential relevance of the testimony of McElroy or Patelis.

The analysis begins, again, with relevance. Fed. R. Civ. P. 26(b)(1). The clearest case of irrelevance is the testimony of Patelis. Patelis has apparently had nothing to do with Miller's case or Woofter. The absence of knowledge is not conclusively established in the record but is nonetheless suggested by the briefing. Neither party makes a single statement related to Patelis's knowledge of Miller, Woofter, or anything related to this litigation. Thus, the purpose of Patelis's deposition would be to obtain his speculative consideration of information that he has not previously reviewed, about an inmate he has not previously met. If so, for the same reason that non-party Steve Hurd's testimony was found to be irrelevant in the Court's prior Order, so is Patelis's.

Patelis certainly has knowledge of how board decisions are made and what type of information is considered, but that kind of generic expert knowledge is improper for this deposition. Indeed, Rule 45(c)(3)(B)(ii) of the Federal Rules of Civil Procedure limits the ability of a party to depose a non-party to obtain their expert opinion and was intended to provide "appropriate protection for the intellectual property of non-party witness . . . . A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts." *Mattel, Inc. v. Walking Mtn. Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (citing Fed. R. Civ. P. 45, 1991 amend. note, abrogated on other grounds by *Punchbowl, Inc. v. AJ Press*, LLC, 90 F.4th 1022 (9th Cir. 2024)). Because Patelis has no knowledge of any of the particularities of this litigation, his has no relevant testimony. But it also appears that Miller seeks to depose him to gain insight into the workings of the Board, and that is an improper attempt to use him as an unretained expert. Patelis's subpoena is quashed.

McElroy and Newman provide more nuanced cases. By their own admissions, both are aware, to some degree, of Miller. McElroy's knowledge appears administrative, when, as Chief of Staff of the Board, he communicated with Miller and his counsel. McElroy acknowledged receipt of a request to remove Smelko's report from Miller's file and denied it, and he told Miller to have his attorney communicate with the Board instead of doing so directly. (Doc. 61 at 5–

6

6.) There is nothing about these interactions that is relevant to Miller's claims against Woofter. McElroy made no comment about the content of Smelko's report, and, as Chief of Staff, he did not have an adjudicatory role on the Board, so his opinion would have been irrelevant anyway. In any event, Miller's brief does not assert any relevance for McElroy's deposition. It will be quashed.

Miller's brief does address the relevance of Newman's testimony, based on Newman's email exchange with Miller's defense counsel. (Doc. 66 at 2–3.) Newman sent an email to Miller's defense counsel, which is attached to Miller's brief and his Second Amended Complaint. (Doc. 66-1.) Newman's email responds to an inquiry from Miller's counsel about "issues" with a third-party's report regarding Miller. This report appears, from context, to be an evaluation prepared for the purposes of parole by an expert hired by the defense. Newman's email explains some weaknesses he identified in the report and apparently refers to some of the comments that Miller contends Woofter made in retaliation against him. (*Id.*)

Miller contends that Newman's deposition opinion about how Woofter's report would affect his future chance of parole is relevant to show the injury he has incurred due to Woofter's allegedly retaliatory behavior. Miller's position makes some logical sense; it does not, however, make legal sense. Miller's asserted injuries, as it stands, are that he was kicked out of the group he needed to complete

7

to be eligible for parole, and Woofter has made false or negative retaliatory statements about him, some of which have entered the stream, so to speak, of information about him. If those facts are true, Miller has already been injured by Woofter's conduct. Parole Board member Newman's speculation about how an allegedly retaliatory and negative opinion might affect a future parole hearing is irrelevant to Miller's prima facie case, in this litigation, of First and Fourteenth Amendment violations. Miller is entitled to discovery about the injuries that have occurred to him; he is not entitled to discovery on some hypothetical future injury that may not come to pass.[1]

## IV. Conclusion

Miller subpoenaed several non-parties whose testimony is not relevant to his claims in this litigation, and thus, those subpoenas will be quashed. However, the testimony of Bowman Smelko may yield relevant information.

---

[1] The availability of a privilege against testifying, relied upon by the non-parties, is not addressed here because it is secondary, in this context, to the linchpin of relevance. The non-parties likely do have immunity regarding testimony about their judicial functions, i.e., the way they go about making a parole decision, or why they made a certain decision, "…because their judgments are "functional[ly] comparab[le]" to those of judges—that is, because they, too, "exercise a discretionary judgment" as a part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36, (1993) (internal citations omitted.) However, some aspects of their asserted acts, such as acknowledging receipt of a letter, may not be so easily considered a judicial function. Thus, because the testimony is irrelevant, there is no need to wade into questions of the scope of any quasi-judicial immunity; no determination regarding immunity is made.

Accordingly, IT IS ORDERED that:

1. Bowman Smelko's Motion to Quash (Doc. 54) is DENIED.

2. McElroy, Newman, and Patelis's Motion to Quash (Doc. 60) is GRANTED. The deposition subpoenas issued for McElroy, Newman, and Patelis are QUASHED.

3. At all times, Miller must update the Court with any change of address.

DATED this **1st** day of October, 2024.

_____
Donald W. Molloy, District Judge
United States District Court